IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02729-CMA-MDB

SARAH NARANJO, an individual, and
MARIE ADORNO, parent of Robert Anthony Avila and Personal Representative of the Estate of
Robert Anthony Avila, deceased

      Plaintiffs,

v.

BRANDON VICTOR, an individual, and
CITY OF THE CITY, a governmental entity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on "Defendant City of Pueblo's Motion to Dismiss Plaintiff's Complaint and Jury Demand (ECF 1) Pursuant to Fed. R. Civ. P. 12(b)(6)" (["Motion"], Doc. No. 14). Plaintiffs have responded in opposition to the Motion, (["Response"], Doc. No. 23), and Defendants have replied. (["Reply"], Doc. No. 31).  For the following reasons, it is RECOMMENDED that the Motion be DENIED.

### STATEMENT OF THE CASE

      Plaintiffs Sarah Naranjo and Marie Adorno, on behalf of the deceased, Robert Anthony Avila ("Plaintiffs"), bring this lawsuit, pursuant to 42 U.S.C. § 1983, asserting violations of constitutional rights by the City of Pueblo ("City") and Brandon Victor ("Defendant Victor") (together with the City, "Defendants"). (["Complaint"], Doc. No. 1).

According to the Complaint, on May 15, 2020, Defendant Victor shot and killed Robert Avila and severely wounded Sarah Naranjo. (Doc. No. 1 at ¶ 8). Mr. Avila and Ms. Naranjo were in a green Honda that had been reported stolen when Defendant Victor approached and called dispatch to let them know he would be making contact with the green Honda. (*Id.* at ¶¶ 9-12). Before other officers arrived in response to his request for backup, Defendant Victor reached for the door handle on the driver's door. (*Id.* at ¶¶ 9–22). Mr. Avila, who had been asleep in the vehicle, woke up and put the vehicle in drive. (*Id.* at ¶ 23). Defendant Victor reached inside the open window on the driver's side in an alleged attempt to grab Mr. Avila. (*Id.* at ¶ 24). The Complaint further alleges that the green Honda inched forward and made contact with Defendant Victor's patrol vehicle. (*Id.* at ¶ 27). Defendant Victor then allegedly aimed the weapon through the open driver's side window and fired several rounds, striking both Mr. Avila and Ms. Naranjo. (*Id.* at ¶ 28).

Defendant Victor claims that he fired shots after being pinned under Mr. Avila's armpit, when Mr. Avila placed his hands on the wheel at 10 and 2. (*Id.* at ¶¶ 25–26). The City claims that Defendant Victor was dragged and that the vehicle was used as a weapon and posed a threat to Defendant Victor. (Doc. No. 31 at 1).

Plaintiffs allege that Defendant Victor fabricated the story that he was pinned and dragged by the vehicle. (Doc. No. 1 at ¶¶ 25–26, 57). The Complaint makes several allegations in support of Plaintiffs' theory that Defendant Victor was not dragged and that the Honda was not an immediate threat to Defendant Victor or any other person's safety. (*Id.* at ¶¶ 52–81). The Complaint also alleges that the only injury observed or treated on Defendant Victor was a red mark on the inside of Defendant Victor's upper left forearm with light brown coloring around it,

indicating it was an older bruise. (*Id.* at ¶¶ 39–40). The Complaint also alleges that a sample of Defendant Victor's blood, taken by hospital staff after the incident, indicated that Defendant Victor's blood alcohol level was extrapolated to be 0.05 when he arrived on shift the night of the incident. (*Id.* at ¶¶ 43–44). It further alleges that even though "the highest levels of the City Police Department and the Tenth Judicial District Attorney, Jeff Chostner, knew that Defendant Victor was intoxicated at the time of the shooting," they exonerated him of all criminal charges. (*Id.* at ¶ 46). The Complaint also alleges that Defendant Victor admitted to taking steroids in the past and that some officers heard that Defendant Victor may have been using illegal steroids at the time of the incident. (*Id.* at ¶¶ 85–87). It also alleges that on the night in question Defendant Victor was angry and upset about having to handle a call that should have belonged to someone else. (*Id.* at ¶ 95). Further, an allegation in the Complaint indicates that Defendant Victor knew Mr. Avila and had threatened him in the past. (*Id.* at ¶ 110).

The Complaint also makes allegations about Defendant Victor's history as a police officer. On July 18, 2019, Defendant Victor allegedly shot and killed Patrick Martinez inside his home after Mr. Martinez lobbed a knife at officers. (*Id.* at ¶ 82). Defendant Victor allegedly shot Mr. Martinez, striking him in the neck and killing him. (*Id.*). On March 20, 2020, Defendant Victor allegedly shot and injured Angel Avila near the intersection of 13th Street and Deane Lane in the City. Plaintiff alleges that in that case, like in this case, Defendant Victor came upon a stolen car. (*Id.*). Defendant Victor approached the driver's side of the vehicle and attempted to open the door, but the door handle broke off. When the driver put the truck into gear and accelerated forward, Defendant Victor shot into the vehicle striking Angel Avila (not to be confused with the decedent in this case, Robert Avila). (*Id.*).

According to the Complaint, colleagues describe Defendant Victor as erratic, (*Id.* at ¶ 85), "strung up to the point that he wanted to make a name for himself," (*Id.* at ¶ 105), constantly seeking attention, (*Id.* at ¶ 107), and someone who "often makes things up[.]" (*Id.* at ¶ 97). The Complaint alleges that during a social visit among officers, Defendant Victor proudly showed videos of a prior fatal incident. (*Id.* at ¶ 89). One officer allegedly stated that Defendant Victor "wore his killings like a badge of honor and went around bragging about them to colleagues." (*Id.*). Another officer told investigators that Defendant Victor constantly sought praise for his shootings. (*Id.* at ¶ 97).

According to the Complaint, "Pueblo police officers are improperly and inadequately trained in the use of deadly force in the context of a fleeing vehicle that is not maneuvering in a reckless manner and fails to pose an actual threat of or create a situation where there is a near certainty of death or serious bodily injury to officers or third parties." (*Id.* at ¶ 137). Moreover, "officers are trained to believe deadly force is appropriate so long as a vehicle is fleeing and officers determine the vehicle itself is a deadly weapon even if it is not being used in a manner so as to create a scenario where there is an actual threat, or reason to believe there is a near certainty of death or serious bodily injury to officers or civilians." (*Id.* at ¶ 138). And according to the Complaint, the City did not supervise or otherwise scrutinize Defendant Victor's conduct after his two prior shootings, even though those shootings placed the City on notice that the failure to adequately train its officers, and specifically Defendant Victor, was substantially certain to result in a constitutional violation. (*Id.* at ¶¶ 140–42).

The City argues that Plaintiffs have failed to state a viable *Monell* claim, and that Plaintiffs' Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil

Procedure 12(b)(6). Specifically, the City argues that Plaintiffs' complaint makes "conclusory allegations" without plausibly establishing the elements of a *Monell* claim: that Plaintiffs suffered a constitutional violation directly caused by one of the City's policies or customs. (Doc. No. 14 at 3–14).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a

plausible claim for relief, the claim survives the motion to dismiss. *Id.* at 679.

That being said, the Court need not accept conclusory allegations without supporting

factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a]

pleading that offers' labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Id.* (citation omitted). Still, all that is required is plausibility, not

probability. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. Indeed, a well-pleaded Complaint can survive a motion to

dismiss even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555

(quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court typically may not look beyond

the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "Pleadings," for

purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint,

documents incorporated into the complaint by reference, and information subject to judicial

notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*,

627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Documents referred to in a complaint are considered part of the pleadings and thus subject to the

Court's consideration in a 12(b)(6) motion if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Toone v. Wells Fargo, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Gee*, 627 F.3d at 1186); *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103–04 (10th Cir. 2017) (stating that the "district court did not abuse its discretion and properly considered [the defendant's] motion as a Rule 12(b)(6) motion to dismiss" when the district court considered video recordings that "were (1) attached to or referenced in the amended complaint, (2) central to BCA's claim, and (3) undisputed as to their accuracy and authenticity").

Here, the City asks the Court to consider the dashcam footage as part of the pleadings (Doc. No. 31 at 2 n.2). Although the Plaintiffs reference the dashcam footage in their Complaint, they note that the shooting itself was not captured on the dashcam. (Doc. No. 1 at ¶ 67). However, the Complaint goes on to describe the dashcam footage. In particular, it describes a portion of the incident that is central to Plaintiffs' claims—that "Defendant Victor appears to be voluntarily running alongside of the Honda," and "was never in the direct path of the Honda." (*Id.* at ¶¶ 69–70). Whether Defendant Victor faced an immediate threat is central to this dispute. Moreover, Plaintiffs appear to rely on the dashcam footage to claim that Defendant Victor was not facing an immediate threat. Therefore, the Court will consider the dashcam footage for the purpose of this Motion.

The City also asks the Court to consider the Pueblo Police Department Manual as part of the pleadings. (Doc. No. 31 at 6 n.4). The City's sole argument on this request is that "Plaintiffs referenced to [sic] the City's policy in their Complaint in multiple paragraphs including ¶¶ 135–138." (*Id.*). However, the Court has not found a single reference to any "manual" in Plaintiffs'

Complaint. Although Plaintiffs reference policies and trainings, they do not reference manuals. The Court, therefore, declines to consider the Pueblo Police Department Manual.

## ANALYSIS

Under *Monell v. Department of Social Services of City of New York*, a plaintiff who brings claims against a municipality must establish: (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy, and (3) a direct causal link between the custom or policy and the violation alleged. 436 U.S. 658, 694 (1978). A municipal policy or custom may take different forms, but here Plaintiff appears to be arguing that the policy or custom at issue is the City's failure to train and supervise Defendant Victor. (Doc. No. 1 at ¶¶ 113–15, 130–59; Doc. No. 23 at 3, 7–14).

A policy or custom may take the form of "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *2 (D. Colo. Apr. 17, 2012) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Thus, in this case, Plaintiffs' Complaint must sufficiently plead a constitutional violation, a plausible failure to adequately train or supervise that resulted from the City's deliberate indifference, and a direct causal link between the City's failure and the alleged violation.

1. **The alleged constitutional violation**

As to the first element, Plaintiffs are alleging a violation of their Fourth Amendment right to be free from unreasonable or excessive force in connection with searches and seizures. (Doc. No. 1 at ¶¶ 118–29). "The use of deadly force to prevent the escape of all felony suspects…is constitutionally unreasonable where there is no probable cause to believe the suspect poses an

immediate threat to the officer or others, or the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm." *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985).

Here, the City relies on dashcam footage to argue that Defendant Victor was justified in using deadly force because he was trapped and dragged by Mr. Avila's car. (Doc. No. 31 at 2–5). Plaintiffs also rely on the dashcam video footage, but they allege that Defendant Victor voluntarily ran alongside the vehicle and was not trapped. (Doc. No. 1 at ¶¶ 60–72).

Even if the Court agreed that the dashcam video footage irrefutably demonstrates that Mr. Avila was trapped without the ability to pull away from the car, there would still be a question as to whether Defendant Victor unreasonably created the need to use deadly force. *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) ("reckless or deliberate conduct during the seizure unreasonably created the need to use such force."); *Pauly v. White*, 874 F.3d 1197, 1217 (10th Cir. 2017) (stating that whether the use of force was reasonable depends in part "on whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force"); *Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997) ("We will thus consider an officer's conduct prior to the suspect's threat of force if the conduct is 'immediately connected' to the suspect's threat of force.").

Here, Plaintiffs allege that Defendant Victor's own reckless conduct during the incident created the need to use deadly force against Mr. Avila and Ms. Naranjo. (Doc. No. 1 at ¶ 128). They allege that on the night of the incident, Defendant Victor may have been under the influence. (*Id.* at ¶¶ 43–44, 85–87). They also allege that Defendant Victor approached the stolen vehicle alone, possibly in violation of policy and training. (*Id.* at ¶¶ 9–16). And they allege that

737449414227ab4d

Defendant Victor may have had personal animosity towards Mr. Avila. (*Id.* at ¶ 110), and that he considered shootings to be a "badge of honor." (*Id.* at ¶ 89). Viewing the allegations in the light most favorable to Plaintiffs, it is at least plausible that Defendant Victor's decision to approach and reach into or hold on to the vehicle could be found to be reckless or deliberate conduct that created the need for the force at issue.

Moreover, upon review of the dashcam footage, it is not possible to determine with certainty whether Defendant Victor was trapped inside the vehicle or was instead holding on to the vehicle in an attempt to prevent Mr. Avila from driving away. Thus, the question of whether deadly force was justified under the circumstances will turn on several facts, many of which are contested by the parties. At this early stage the Court does not have sufficient information to accept one account of the events over another. *Twombly*, 550 U.S. at 556-57 (making clear that a 12(b)(6) analysis focuses on whether a complaint is "plausible," not whether a defendant can articulate a set of competing facts). The Court finds that the facts as pled are at least plausible and sufficient for this Court to infer that Defendant Victor may have violated Mr. Avila and Ms. Naranjo's constitutional rights.

## 2. **The alleged municipal custom or policy**

Plaintiffs allege that the constitutional violation was caused by the City's policy or custom because the City—deliberately and indifferently—failed to: (1) adequately train officers on the constitutional limits of using deadly force; (Doc. No. 1 at ¶¶ 113-14, 130-43; Doc. No. 23 at 8–12); and (2) properly discipline and supervise Defendant Victor. (Doc. No. 1 at ¶¶ 115, 144-59; Doc. No. 23 at 12–15).

*a. Training*

The City argues that Plaintiffs' failure-to-train allegations are inconsistent because, on the one hand, Plaintiffs allege that the City has trained all officers on the constitutional limits of using deadly force, and on the other hand, Plaintiffs allege that the City is not training officers on the constitutional limits. (Doc. No. 14 at 5 (comparing Doc. No. 1 at ¶ 132 to Doc. No. 1 at ¶ 134)).

Plaintiffs' allegations are not inconsistent. Plaintiffs allege that Pueblo police officers are generally trained on the topic of deadly force, (Doc. No. 1 at ¶ 132), *and* they allege that the training is inadequate because it does not provide specific training relevant to the incident at issue. (*Id.* at ¶¶ 133–35). Plaintiffs make specific allegations about the training, what it lacks, what police officers are trained to believe, and the relevant context for the training. (*Id.* at ¶¶ 134–38). The Court is not expressing a view on whether or not the training is adequate. But, viewed in the light most favorable to Plaintiffs, the allegations give rise to an inference that the City's training was inadequate or insufficient to prevent the harm at issue here. (*Id.* at ¶ 143).

*b. Supervision*

With respect to supervision, Plaintiffs focus on the City's alleged failure to discipline Defendant Victor. Specifically, Plaintiffs allege that:

> Prior to the shooting that is the subject of this lawsuit, Defendant Victor was involved in two other officer-involved shootings in the span of eight months. Defendant Victor was not disciplined as a result of his involvement in either of the prior officer-involved shootings… Defendant Victor's erratic, violent, unconstitutional conduct was on full display for the entire police department and public. Despite knowing that Defendant Victor was likely to deprive a person who he came into contact with of their constitutional rights, the City of Pueblo did not discipline Defendant Victor at any time for his actions.

(*Id.* at ¶¶ 147, 156).

In support of their claim, Plaintiffs allege that several colleagues expressed concern about Defendant Victor and that Defendant Victor's prior shootings demonstrated a violent history. (*Id.* at ¶¶ 82–93, 144–59).

The City correctly notes that in this case (unlike in other cases), the alleged failure to investigate and discipline a prior use of deadly force was not in connection with an allegation of wrongdoing via a civilian complaint or internal investigation. (Doc. No. 31 at 10). To this end, in their reply, the City distinguishes Plaintiffs' claims from *Ortega v. City and County of Denver*, 944 F. Supp. 2d 1033 (D. Colo. 2013), where a failure to discipline claim predicated on the defendant's failure to investigate numerous citizen complaints survived summary judgment. *Id.* at 1039–40. However, this distinction is not necessarily dispositive of Plaintiffs' failure to discipline claim, particularly in light of the allegations that many people in the Department were aware of, and concerned by, Defendant Victor's past behavior. *Ortega* does not require that failure to discipline claim rest on a city's refusal to investigate citizen complaints. *Id.* Turning a blind eye to internal apprehension about an officer's conduct, as is alleged here, could give rise to a successful failure to discipline claim.

The City also argues that discipline in response to the prior shootings was unnecessary because Defendant Victor did not engage in any wrongdoing during those prior incidents (Doc. No. 31 at 9) and was cleared of all criminal conduct for those incidents. (*Id.* at 8–9). But whether or not Defendant Victor was found to have engaged in criminal conduct is not determinative of whether or not Defendant Victor engaged in problematic or inappropriate conduct that required discipline. Additionally, the City's assertion that Defendant Victor engaged in no wrongdoing

whatsoever requires further factual development and cannot form the basis for dismissal at this stage. *Twombly*, 550 U.S. at 556 (finding that a 12(b)(6) analysis reviews a complaint for "plausibility," rather than certainty).

In short, viewed in the light most favorable to Plaintiffs, the allegations in the Complaint give rise to an inference that the City failed to properly discipline or supervise Defendant Victor.

### c. Deliberate indifference

On this motion to dismiss, the Court must also determine whether Plaintiffs' Complaint sufficiently pleads that the City was deliberately indifferent to the injuries that could result from their alleged failure to train and supervise. A government entity is deliberately indifferent when it has actual or constructive notice that its actions or inactions will result in a constitutional violation. *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

Plaintiffs allege that several of Defendant Victor's colleagues considered him to be erratic. (Doc. No. 1 at ¶ 85). They also allege that Defendant Victor was vocal about, and proud of, prior fatal incidents. (*Id.* at ¶¶ 89, 97). According to Plaintiffs, the prior fatal incidents occurred within months of each other. (*Id.* at ¶ 82). In support of the allegation that "Defendant Victor is not a well-respected member of the Pueblo police department," the Complaint references multiple interviews with Pueblo police officers, (*Id.* at ¶ 83–107), and Plaintiffs allege that "Defendant Victor's history has been ignored and tolerated despite officer's personal complaints and concerns because the Pueblo Police Department has fully embraced the 'blue wall of silence.'" (*Id.* at ¶ 108).

The City argues that colleague perception is irrelevant, (Doc. No. 31 at 8), and that Defendant Victor was cleared of all criminal conduct in connection with the prior incidents.

(*Id.* at 8–9). The Court is not persuaded by these arguments. If multiple colleagues expressed concerns about Defendant Victor's behavior, it is at least plausible that the City was on notice of the need for additional training and supervision. Further, and as noted above, Defendant Victor may have been cleared of criminal exposure for the prior shooting incidents, but that does not automatically relieve the City of its responsibility to train and supervise Defendant Victor appropriately. The allegations in the Complaint give rise to an inference that Defendant Victor had a reputation for being erratic and possibly violent, and that the City was on notice of Defendant Victor's allegedly "violent history." (Doc. No. 1 at ¶ 82). Additionally, it is at least plausible that the facts and circumstances surrounding the prior shooting incidents, particularly if they occurred within months of each other, placed the City on notice that Defendant Victor required additional training and supervision. *Barney*, 143 F.3d at 1307 ("In most instances, notice can be established by proving the existence of a pattern of tortious conduct."); *McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C. 2016) ("Where plaintiff has alleged numerous instances of prior misconduct, similar to the misconduct alleged here, the Court can plausibly infer that the District had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner.").

### 3.  Causation

Although the City does not appear to challenge Plaintiffs' causation allegations, the Court has reviewed Plaintiffs' allegations and finds that Plaintiffs sufficiently allege a direct causal link between the alleged failure to train and supervise, and the alleged constitutional violations at issue. (Doc. No. 1 at ¶¶ 134–43, 147–59).

## RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendant City of Pueblo's Motion to Dismiss Plaintiff's

Complaint and Jury Demand (ECF 1) Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 14) be

**DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059–60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 12th day of August, 2022.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge