IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02729-CMA-MDB

SARAH NARANJO, and
MARIE ADORNO, parent of Robert Anthony Avila and Personal Representative of the Estate of Robert Anthony Avila, deceased,

    Plaintiffs,

v.

BRANDON VICTOR, and
CITY OF PUEBLO,

    Defendants.

---

**ORDER AFFIRMING AND ADOPTING
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the August 12, 2022 Recommendation of United States Magistrate Judge (Doc. # 51), wherein Judge Maritza Dominguez Braswell recommends this Court deny Defendant City of Pueblo's ("Pueblo") Motion to Dismiss (Doc. # 14). Pueblo timely filed an Objection to the Recommendation. (Doc. # 52.) For the following reasons, the Court affirms and adopts the Recommendation and denies Pueblo's Motion to Dismiss.

    **I.    BACKGROUND**

The following facts are taken from Plaintiffs' Complaint (Doc. # 1) and are assumed to be true for purposes of reviewing the Motion to Dismiss (Doc. # 14). *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On May 15, 2020, at approximately 2:00 AM, Defendant Brandon Victor was on routine patrol in his role as a Pueblo police officer. (Doc. # 1 at ¶¶ 5, 9.) He came across a green Honda stopped with its engine running and rear taillights illuminated. (*Id.* at ¶ 9.) Defendant Victor learned from Dispatch that the green Honda was reported stolen, and he communicated to Dispatch that he would make contact with the car. (*Id.* at ¶¶ 11, 12.) Although Defendant Victor knew from his training that he was not supposed to make contact with a possible stolen car alone, he approached the vehicle without waiting for cover to arrive. (*Id.* at ¶ 13.) He had his weapon drawn. (*Id.* at ¶ 16.)

Plaintiff Sarah Naranjo, in the passenger seat, and Robert Avila, in the driver's seat, were both asleep in the vehicle. (*Id.* at ¶ 17.) Defendant Victor saw that the two occupants were asleep and reached for the door handle on the driver's door, at which time Mr. Avila woke up. (*Id.* at ¶ 22.) Mr. Avila put the vehicle in drive, and Defendant Victor reached inside the open window on the driver's side in an attempt to grab Mr. Avila. (*Id.* at ¶¶ 23–24.) The Honda slowly inched forward and made contact with Defendant Victor's patrol vehicle, which jostled the dash-camera. (*Id.* at ¶ 27.) Defendant Victor then aimed his weapon through the driver's side window and fired several rounds into the vehicle. (*Id.* at ¶ 28.) Ms. Naranjo was woken up by the sound of gunshots. (*Id.* at ¶ 29.) The shots immediately killed Mr. Avila and severely injured Ms. Naranjo. (*Id.* at ¶ 31.)

Defendant Victor led other officers to believe that he was struck by a bullet during the incident, and he told another officer that his left shoulder was dislocated and that he had been dragged by the Honda driven by Mr. Avila. (*Id.* at ¶¶ 35–36.) The Complaint

alleges that Defendant Victor fabricated his claim that "Mr. Avila placed his hands on the steering wheel at 10 and 2, which pinned Defendant Victor's left hand and arm under the armpit of Mr. Avila so tightly that he was unable to free his arm" and that Defendant Victor was then "dragged" by the Honda. (*Id.* at ¶¶ 25–26.) Further, the Complaint alleges that Defendant Victor lied about his injuries. (*Id.* at ¶ 38.) At a hospital after the incident, the only injury observed or treated on Defendant Victor was a small red mark on the inside of his forearm, which appeared to be a bruise that was one to two weeks old. (*Id.* at ¶¶ 38–39.) A blood sample indicated that at the time Defendant Victor came on his shift at 10:00 PM on the night of the shooting, his blood alcohol content ("BAC") was 0.05, enough to charge someone with Driving While Ability Impaired. (*Id.* at ¶ 44.)

The Complaint alleges that Defendant Victor was implicated in at least two other officer-involved shootings in less than 10 months prior to the May 15, 2020 incident. (*Id.* at ¶ 82.) On July 18, 2019, Defendant Victor shot and killed Patrick Martinez in Mr. Martinez's home when officers were there responding to a family disturbance. (*Id.*) After Mr. Martinez lobbed a knife at officers, the handle of which hit one of the officers, Defendant Victor shot him in the neck and killed him. (*Id.*) In addition, on March 20, 2020, Defendant Victor shot and seriously injured Angel Avila. (*Id.*) In that incident, which Plaintiffs assert is "remarkably similar" to the shooting in the instant case, Defendant Victor came upon a stolen car and attempted to open the door. When the driver, Angel Avila, put the vehicle into gear, Defendant Victor shot into the vehicle and struck him several times. (*Id.*) Another officer, Brian Gowin, reported that Defendant Victor's behavior following this shooting made him uneasy and that Defendant Victor

was so nervous afterward that it made Officer Gowin "question what actually happened." (*Id.* at ¶ 102.)

Plaintiffs further allege that Defendant Victor is not a well-respected member of the Pueblo police department. (*Id.* at ¶ 83.) Several officers gave statements as to their knowledge of Defendant Victor using illegal steroids, and detectives suggested that possible steroid use was a cause of his recent "erratic behavior." (*Id.* at ¶ 85.) In addition, the Complaint alleges that at least six other officers provided statements about Defendant Victor's troubling behavior and reputation in the department. For example, Officer Jake Hill stated that Defendant Victor bragged about his shootings to colleagues and showed videos of one of his previous killings during a social event at another officer's house. (*Id.* at ¶ 89.) Officer Sam Story recalled an incident in which Defendant Victor shoved Officer Story and said, "I've already shot two people, I don't have a problem making you my third." (*Id.* at ¶ 91.) Officer Christina Marroquin described Defendant Victor as aggressive and stated that he constantly sought praise for his shootings from colleagues. (*Id.* at ¶ 97.) Further, on the night of the incident in this case, Officer Gowin heard Defendant Victor report over the radio that he was going to approach the green Honda, and Office Gowin "thought to himself that they were going to have 'shots fired.'" (*Id.* at ¶ 101.) Thirty second later, Officer Gowin heard "shots fired" over the radio.[1] (*Id.*)

---

[1] The Court has reviewed but does not summarize several other allegations stemming from these interviews regarding Defendant Victor's history of aggressive conduct and reputation in the Pueblo police department. *See* (Doc. # 1 at ¶¶ 83–108.)

4

The Complaint alleges that the Pueblo Police Department has ignored and tolerated Defendant Victor's history despite other officers' personal complaints and concerns because the department "has fully embraced the 'blue wall of silence.'" (*Id.* at ¶ 108.) Moreover, Plaintiffs allege that Pueblo and the Pueblo Police Department "are training officers that it is permissible to use deadly force against occupants of a vehicle so long as officers consider the vehicle a deadly weapon and it is used to flee apprehension, even if the vehicle itself is not being utilized in a manner so as to create a scenario where there is an actual threat, or reason to believe there is a near certainty of death or serious bodily injury to officers or civilians." (*Id.* at ¶ 135.) Accordingly, Plaintiffs allege that Pueblo police officers are improperly and inadequately trained in the use of deadly force in the context of a fleeing vehicle that does not pose a threat of death or bodily injury. (*Id.* at ¶ 137.) Plaintiffs further allege that Pueblo failed to discipline Defendant Victor at any time for his actions with respect to his prior uses of deadly force. (*Id.* at ¶¶ 156, 158.)

Plaintiffs initiated this case on October 8, 2021. In their Complaint, they assert three claims for relief pursuant to 42 U.S.C. § 1983: an excessive force claim under the Fourth Amendment against Defendant Victor, and two municipal liability claims against Defendant Pueblo for failure to train and failure to discipline. On December 28, 2021, Pueblo filed the instant Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 14), which the Court referred to the Magistrate Judge (Doc. # 20). On August 12, 2022, Magistrate Judge Dominguez Braswell recommended that this Court deny the Motion to Dismiss. (Doc. # 51.) Pueblo timely filed an Objection. (Doc. # 52.)

## II.   LEGAL STANDARDS

### A.   REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting the review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

### B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the

6

plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III.   DISCUSSION

In her Recommendation, Judge Dominguez Braswell determined that the Complaint plausibly alleges municipal liability claims against Pueblo for failure to train and failure to supervise. Accordingly, she recommends this Court deny Pueblo's Motion to Dismiss for failure to state a claim. Pueblo objects on the grounds that the Recommendation "mistakenly accepted Plaintiffs' legal conclusions as facts and failed to apply the legal precedent to the actual facts" in concluding that Plaintiffs sufficiently allege (1) a legally viable failure-to-train claim; (2) a legally viable failure-to-supervise claim; (3) that Pueblo was deliberately indifferent and had actual and constructive notice of a possible constitutional violation; and (4) a direct casual link between the alleged

failure to train and supervise and the alleged constitutional violation. (Doc. # 52 at 1–2.) The Court reviews the matter *de novo*.

**A.    APPLICABLE LAW**

To state a claim for municipal liability, a plaintiff must allege facts which, if true, would establish (1) a constitutional violation by a municipal employee; (2) the existence of a municipal custom or policy; and (3) a direct causal link between the custom or policy and the violation alleged. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal policy or custom may take the form of "the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and citation omitted). Because the failures to 'train' or 'supervise' are so similar, they are often discussed together and require the same elements. *See, e.g.*, *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *4 (D. Colo. Apr. 17, 2012) (citing *Bryson*, 627 F.3d at 788). In discussing "deliberate indifference" for a failure to train claim, the Tenth Circuit explained:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson*, 627 F.3d at 789 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)).

**B.   ANALYSIS**

    1.   <u>Failure to Train</u>

Pueblo argues that the Recommendation erred in determining that Plaintiffs plausibly alleged that Pueblo failed to train its officers. (Doc. # 52 at 5.) First, Pueblo contends that the Recommendation failed to take into consideration "the legal precedent which does not require a police department to train its officers as to every single situation they may possible encounter." (*Id.* at 6.) While Pueblo is correct that it is insufficient to show "that an injury or accident could have been avoided if an officer had had better or more training," *City of Canton v. Harris*, 489 U.S. 378, 391 (1989), the Court disagrees that this precedent requires dismissal of Plaintiffs' claim. Rather, *City of Canton* requires that Plaintiffs plausibly allege that Pueblo's "failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392. The Recommendation found that Plaintiffs sufficiently pled that Pueblo was deliberately indifferent to the injuries that could result from the alleged failure to train. *See* (Doc. # 51 at 13.) Thus, the Recommendation considered and applied the correct legal precedent.

Next, Pueblo contends that Plaintiffs' allegations relating to failure to train are legal conclusions or "factually distinguishable from what actually happened in the case." (Doc. # 52 at 6.) The Court disagrees. The Complaint alleges that "Pueblo Police officers are trained to believe deadly force is appropriate so long as a vehicle is fleeing and officers determine the vehicle itself is a deadly weapon even if it is not being used

in a manner so as to create a scenario where there is an actual threat, or reason to believe there is a near certainty of death or serious bodily injury to officers or civilians." (Doc. # 1 at ¶ 138.) This is not a legal conclusion, but an allegation of specific improper or inadequate training. To the extent that Pueblo argues that the allegation is "factually distinguishable" from the events of this case because Mr. Avila was actually driving recklessly or using the vehicle as a deadly weapon, the Court finds that such an argument requires further factual development and is improper for considering a Rule 12(b)(6) motion. *See Dubbs*, 336 F.3d at 1201 ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

      Finally, Pueblo argues that the Complaint does not cite to any actual city policy or police training manual and asks the Court to consider the Pueblo Police Department Policy Manual to refute Plaintiffs' training allegations. (Doc. # 52 at 7.) Pueblo provides no authority for its assertion that Plaintiffs cannot plausibly allege a failure to train without citing to a police manual. Further, because the Complaint does not reference the Manual, the Court does not find it appropriate to look outside the pleadings and review the Manual to evaluate the sufficiency or truth of Plaintiffs' allegations. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding that a court reviewing a 12(b)(6) motion may consider documents incorporated by reference in the complaint, documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," and matters of which

10

a court may take judicial notice). Any factual dispute about the content of Pueblo's training is inappropriate to raise at this stage of the proceedings. For purposes of reviewing the Motion to Dismiss, the Court is satisfied that Plaintiffs have plausibly alleged that Pueblo's training was inadequate or insufficient to prevent the harm alleged in this case. The Court therefore overrules Pueblo's objections.

    2.    <u>Failure to Supervise</u>

Next, Pueblo argues that the Complaint does not contain necessary facts to sufficiently allege that Pueblo was required to and failed to supervise and discipline Defendant Victor. (Doc. # 52 at 8.) Although Pueblo acknowledges that Plaintiffs allege that Defendant Victor was involved in two other officer-involved shootings in the ten months prior to the incident in this case, Pueblo contends that Plaintiffs failed to sufficiently allege that Pueblo was on notice that supervision or discipline was needed or that Defendant Victor committed any prior wrongdoing during these two other shootings. (*Id.*)

The Court disagrees with Pueblo and finds that the Complaint contains sufficient allegations to state a claim for failure to supervise. Plaintiffs include extensive allegations of statements from other officers indicating that Defendant Victor's erratic behavior and violent history were well known by members of the Pueblo Police Department. *See* (Doc. # 1 at ¶¶ 83–109.) With respect to the two prior shootings, Plaintiffs allege that Defendant Victor "exceeded the constitutional limitations on the use of deadly force" in both incidents and was not formally disciplined for "unlawfully using deadly force" in either instance. (*Id.* at ¶¶ 115, 148). Pueblo argues that the allegations

11

are insufficient because the Complaint does not allege that (1) "any civil action was ever filed against the City in the prior incidents"; (2) "a complaint was made to the police departing regarding Defendant Victor's actions in prior incidents"; (3) "any internal investigation failed to investigate alleged wrongdoing by Defendant Victor"; or (4) any officer brought a concern about Defendant Victor to "any policymaker within the City or the police department **prior** to this incident." (Doc. # 52 at 9.) Again, Pueblo provides no legal authority that any of these specific allegations are *required* in order for a Court to find that a complaint plausibly alleges that a city was on notice of prior wrongdoing by a police officer. *See* (*id.*) Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that there are sufficient facts for the Court to draw the reasonable inference that Pueblo was on notice that Defendant Victor exceeded the constitutional limits on use of force in two recent prior incidents and that supervision or discipline was needed. *See Ashcroft*, 556 U.S. at 678.

    3.    <u>Deliberate Indifference</u>

Next, Pueblo challenges the Recommendation's determination that the Complaint sufficiently alleged that Pueblo was deliberately indifferent to the likelihood that its actions or inactions as to Defendant Victor would result in a constitutional violation.

Deliberate indifference is established when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation. *Barney*, 143 F.3d at 1307. "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* However, a

"single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation," is also sufficient to trigger municipal liability. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 842 (10th Cir. 1997).

In objecting to the Recommendation's finding that Plaintiffs sufficiently alleged deliberate indifference, Pueblo reiterates its arguments that there are "no facts" indicating that Defendant Victor was involved in prior similar incidents of misconduct or that Pueblo was aware of those incidents so as to have actual or constructive knowledge of a risk of constitutional violations. (Doc. # 52 at 10–13.) The Court does not find this argument persuasive. Plaintiffs adequately allege that Defendant Victor was involved in two other shootings in the ten months prior to the incident in this case and that each was an excessive use of force. (Doc. # 1 at ¶¶ 82, 146–48.) One alleged incident—in which Defendant Victor came across a stolen car, reached for the door handle, and then fired shots into the vehicle when the driver put the vehicle into gear— is remarkably similar to the alleged incident in this case and happened only two months prior. (*Id.* at ¶ 82.) Plaintiffs further allege that Defendant Victor's conduct was well known in the Pueblo Police Department and his history "has been ignored and tolerated despite officer[s'] personal complaints and concerns." (*Id.* at ¶¶ 83–108.) Accepting these allegations as true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged deliberate indifference on the part of Pueblo with respect to Defendant Victor. *See Hall*, 935 F.2d at 1109.

### 4. Causation

Finally, Pueblo objects to the Recommendation's finding that Plaintiffs sufficiently allege a direct causal link between the alleged failures to train and supervise and the alleged constitutional violation at issue. (Doc. # 52 at 13–15.) The Recommendation noted that Pueblo "does not appear to challenge Plaintiffs' causation allegations." (Doc. # 51 at 14.) However, Pueblo objects that it "strenuously argued that Plaintiffs failed to allege required causation" in its Motion to Dismiss. (Doc. # 52 at 14). The Court agrees with Pueblo that it challenged causation in its Motion to Dismiss. *See* (Doc. # 14 at 12–13.) However, the Court nevertheless finds that Plaintiffs plausibly allege causation and that the Recommendation did not err in determining that Pueblo's Motion to Dismiss should be denied.

To allege a municipal liability claim for failure to train or supervise, "a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788). In addition to the allegations of prior incidents of misconduct that the Court already discussed, Plaintiffs allege that Defendant Victor's actions were "the result of being untrained" (Doc. # 1 at ¶ 114), and that Pueblo's failure to properly train and discipline Defendant Victor was the "moving force" behind the incident in this case (*id.* at ¶¶ 143, 159). The Court finds that the allegations in the Complaint, taken as true and viewed in the light most favorable to Plaintiffs, are sufficient to infer that Pueblo failed to adequately train or discipline Defendant Victor concerning two prior alleged instances of excessive force and that a direct connection

14

existed between that failure to train and supervise and the shooting in this case. Pueblo's objections are therefore overruled.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- the August 12, 2022 Recommendation of United States Magistrate Judge (Doc. # 51) is AFFIRMED and ADOPTED as an Order of this Court; and

- Defendant City of Pueblo's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 14) is DENIED.

DATED:  September 2, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge